UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GORDON SWEARINGEN and MAJOLIS SWEARINGEN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 11 C 01051 |
| v. | ) ) ) | Judge Edmond E. Chang |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Gordon and Majolis Swearingen[1] sued Portfolio Recovery Associates, LLC (Portfolio), alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.,* stemming from Portfolio's attempts to collect a debt from Majolis.[2]  The Swearingens claim they are entitled to statutory damages under the FDCPA because Portfolio's pattern of phone calls amounted to harassment and because Portfolio's threats to sue on the outstanding debt were prohibited by the FDCPA in light of the age of the debt. Portfolio moves for summary judgment on all counts, and seeks attorneys' fees. R. 31. Although the Swearingens might not have the most factually persuasive case, they have presented enough to raise a genuine issue of material fact. Thus, for the following reasons, Portfolio's motion is denied.

---

[1] To avoid confusion, the opinion will refer to the Swearingens individually by their first names.

[2] The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**I.**

In deciding this summary judgment motion, the Court views the evidence in the light most favorable to Gordon and Majolis Swearingen. Gordon and Majolis are husband and wife and have been married for ten years. R. 46, Pl.'s Stmt. of Additional Facts (PSOF) ¶ 1. Portfolio is in the business of, among other things, collecting on unpaid, outstanding account balances. R. 41, Def.'s Amended Stmt. of Facts (DSOF) ¶ 5.

Sometime in the 1980s, Majolis incurred two debts whose value currently totals around $10,700. DSOF ¶¶ 1, 2; PSOF ¶¶ 2, 3. Portfolio purchased these debts from the original creditors and, beginning on October 14, 2010, began placing phone calls in an attempt to collect on them. DSOF ¶¶ 3, 25. Portfolio placed its last call to the Swearingens on December 28, 2010. DSOF ¶ 25. Portfolio admits to placing 22 calls during the period between October 14, 2010 and December 28, 2010. DSOF ¶ 25. The Swearingens contend the number of calls placed by Portfolio was "far higher," and totaled at least 32.[3] PSOF ¶¶ 30, 50. The parties agree that Portfolio never placed more than two calls in a single day. DSOF ¶ 27.

---

[3] The Court infers the estimate of 32 calls from PSOF ¶ 30, wherein the Swearingens assert that the calls from Portfolio came in pairs, they occurred "at least once per week" (over the 10-week period), there were approximately four weeks in which the Swearingens received two sets of calls from Portfolio, and there was at least one week in which the Swearingens received three sets of calls in one week.

Portfolio placed at least some of its calls to the phone number 319-393-4693, which is the home telephone number for Gordon and Majolis.[4] Each time Portfolio attempted to call for Majolis, Gordon spoke with the Portfolio representative and refused to give the phone to Majolis. DSOF ¶¶ 26, 32. The Swearingens allege that Portfolio also called Gordon repeatedly on his personal cell phone. PSOF ¶¶ 6, 17, 22, 26, 31.[5] Gordon also testified that each time he spoke with a Portfolio representative, he asked them to stop calling. PSOF ¶ 35.

Gordon admits that he, at times, made false statements to the Portfolio representative, including that he and Majolis had separated, in an effort to convince Portfolio to stop calling. DSOF ¶ 33; PSOF ¶¶ 48. In all the calls it placed, Portfolio was never able to speak with Majolis. DSOF ¶ 26. Gordon also testified to, and Portfolio denies, the following additional facts: Each time Portfolio called Gordon's cell phone, Gordon told the Portfolio representative that they would not be able to reach

---

[4] It is true that the Swearingens deny that the number ending in 4693 is their home number. R. 47, Pl.'s Resp. DSOF ¶ 23. However, Gordon testified in his deposition that the number ending in 4693 is his "home number,"R. 46-2, Pl.'s Exh. A (Gordon Dep.) at 9:13-21, and Gordon did not clarify the matter in the affidavit he filed with the Swearingens' summary judgment papers. R. 46-3, Exh. B (Gordon Decl.). In light of this contradiction, and Plaintiffs' failure to explain the inconsistency, the Swearingens have not raised a genuine dispute as to whether the 4639 number is their home number. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168, 1171-72 (7th Cir. 1996) ("[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions . . . [unless the] subsequent affidavit . . . clarif[ies] ambiguous or confusing testimony . . . [or] is based on newly discovered evidence.") (citations omitted).

[5] Portfolio disputes the number and frequency of phone calls its placed to Gordon, R. 49, Def.'s Resp. PSOF ¶ 30, and relies on its "Account Notes" to prove that it only placed 22 calls to Gordon. DSOF ¶¶ 27-29; R. 41, Def.'s Exh. 1 (Account Notes). But Defendant's Account Notes are not dispositive of the issue of the number, frequency and nature of the calls, particularly in light of the fact that Portfolio did not provide evidence that such notes include *every* call that is made by Portfolio.

Majolis on that number, and requested that Portfolio stop calling his cell phone. PSOF ¶¶ 12, 24, 34, 35, 37. Gordon also requested, on numerous occasions, that Portfolio send a letter detailing Majolis's debts. PSOF ¶¶ 14, 20, 25, 38. On around four or five calls Portfolio used an "extremely loud buzzing sound" during the conversation. PSOF ¶ 42. Lastly, Gordon testified that the Portfolio representatives who called threatened to file a lawsuit to collect the debts owed. PSOF ¶¶ 5, 31, 39-41.

Gordon admitted that as the calls continued over the 10-week period, he began to raise his voice and use profanity, and even used a highly offensive racial slur on one occasion.[6] PSOF ¶¶ 45-47. These admissions are confirmed by a tape recording of a call between Portfolio and Gordon from December 28, 2010. DSOF ¶ 44; R. 46-4, Pl.'s Exh. C (audio file).

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them,

---

[6] Although Gordon's use of the slur does not disentitle him to relief, his use of it might be admissible evidence at trial because it could be probative of Gordon's credibility, specifically, it shows the depth of his anger and bias against an employee of Portfolio.

must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

The evidence presented at the summary judgment stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrance, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or must consist of affidavits or declarations "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A non-movant's own deposition testimony may alone be sufficient to create genuine issues of material fact and defeat a motion for summary judgment if the party's testimony is based on personal knowledge or would otherwise be admissible at trial. *See Marr v. Bank of America, N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) ("[U]ncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts."). The Court does not assess the credibility of witnesses or weigh evidence, *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005), and will not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.

"Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, — U.S. —, 130 S. Ct. 1605, 1608 (2010). "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brewster & Neider, SC*, 111 F.3d 1322, 1324 (7th Cir. 1997); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("the FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists").

The enforcement provision of the Act imposes liability on "any debt collector who fails to comply with any provision of this title with respect to *any person*." 15 U.S.C. § 1692k(a) (emphasis added). By its plain language then, the FDCPA provides relief for debtors as well as non-debtors, provided no limitation in scope is stated within the specific provision on which the plaintiff's allegations are based.[7] *See Dunham v. Portfolio Recovery Assoc., Inc.*, 663 F.3d 997, 1001 (8th Cir. 2011) (noting that while certain provisions of the FDCPA restrict the scope of its application by using the word "consumer," other provisions apply broadly to "any person"); *Rawlinson v. Law Office*

---

[7] For example, 15 U.S.C. § 1692g, governing the manner in which a debt collector may notify a consumer of an outstanding debt, specifically restricts application of the provision to "the consumer." The term "consumer" is defined by the Act as "any natural person *obligated or allegedly obligated to pay any debt*." 15 U.S.C. §§ 1692a (emphasis added).

*of William M. Rodow, LLC,* 460 Fed. Appx. 254, 258 (4th Cir. 2012) (holding that the FDCPA may provide relief for a debtor's aunt); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985); *see also Flowers v. Accelerated Bureau of Collections, Inc.,* 96 C 4003, 1997 WL 136313, at *7-8 (N.D. Ill. Mar. 19, 1997) (noting that "[m]any courts have held that 'person' includes non-debtors who have nonetheless been harmed by an improper debt collection practice"); *Villareal v. Snow*, 95 C 2484, 1996 WL 28254, at *2 (N.D. Ill. Jan. 19, 1996) ("The courts have confirmed that even persons other than a consumer may sue for violations of the FDPCA [sic] according to the broad language of [15 U.S.C. § 1692k(a)]."). *Cf. Keele v. Wexler*, 149 F.3d 589, 595-96 (7th Cir. 1998) (holding that the phrase "any person" should not be construed narrowly to exclude debtors who willfully refuse to pay valid debts).

The Swearingens have brought claims under 15 U.S.C. § 1692d, which governs harassing, oppressive and abusive conduct by debt collectors, and 15 U.S.C. § 1692e, which governs false, deceptive, and misleading conduct by debt collectors.

## A.

Section 1692d of the FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d also lists specific conduct that is prohibited, and includes "[c]ausing a telephone to ring or engaging any person in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." § 1692d(5). Courts have phrased the central issue under § 1692d(5) to be whether "the volume and pattern

of calls demonstrates an intent to contact debtors rather than an intent to annoy, abuse or harass them." *Chavious v. CBE Group*, 2012 WL 113509, at *2 (E.D.N.Y. Jan. 13, 2012). Whether a debt collector's telephone calls were made with an "intent to annoy, abuse, or harass" may be inferred from circumstantial evidence. *Hendricks v. CBE Group, Inc.,* 2012 WL 1191861, at *3 (N.D. Ill. Apr. 10, 2012); *see also Chavious* , 2012 WL 113509, at *2; *Pratt v. CMRE Financial Services, Inc.*, 2012 WL 86957, at *3 (E.D. Mo. Jan.11, 2012). The issue of intent is often a question for the jury. *See, e.g., Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230, 233 (11th Cir. 2011) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury.")*; Hendricks*, 2012 WL 1191861, at *4 (denying summary judgment on a § 1692d(5) claim, where Court concluded that "reasonable juror[s] could find that [the debt collector] placed calls to [plaintiff] with an intent to annoy, abuse or harass").

The Swearingens have sworn to sufficient facts to defeat a motion for summary judgment on their claims based on Portfolio's harassing phone calls.[8] First, the

---

[8] Portfolio assserts throughout its briefs that the Swearingens have not produced sufficient evidence to overcome a motion for summary judgment. R. 33 at 8, 10-11; R. 48, Def.'s Reply Br. at 9. As explained, *supra*, a non-movant's own deposition testimony may alone be sufficient to create genuine issues of material fact and defeat a motion for summary judgment, so long as the parties' testimony is based on personal knowledge or would otherwise be admissible at trial. *See Marr*, 662 F.3d at 968. Here, Plaintiffs have presented Gordon's sworn deposition testimony, as well as his sworn declaration, both of which allege facts based on Gordon's personal knowledge and in sufficient detail to create genuine issues of material facts. *Id.* As for Portfolio's argument that Gordon's testimony contains "manufactured facts," and therefore cannot create an issue of fact [R. 48 at 9], the Court does not assess the credibility of witnesses or weigh evidence on a motion for summary judgment. *Abdullahi*, 423 F.3d at 773. So long as the admissible facts in the declaration do not contradict under-oath testimony (without an explanation as to why), then they must be considered in response to the summary judgment motion.

Swearingens allege, and Gordon has provided testimony to support, that Portfolio repeatedly called his cell phone, even after Gordon informed Portfolio representatives that it was his personal cell phone, and that Majolis could not be reached by calling it. PSOF ¶¶ 12, 24, 34, 35, 37. A similar set of facts arose in *Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. at 233. In *Meadows*, the Eleventh Circuit reversed summary judgment for the debt collector, relying in part on the fact that the debt collector continued calling the plaintiff (who turned out not to be the debtor) well after she informed the collector that it had the incorrect number and would not be able to reach the actual debtor on it. *Id.* The Court held that "a reasonable jury could conclude that [the Defendant's] practices were harassing." *Id.* Assuming Gordon's testimony regarding the phone calls is true, which the Court must on a motion for summary judgment, the Swearingens created a genuine issue of fact as to whether Portfolio's phone calls were harassing under 15 U.S.C. § 1692d(5).

In addition, Gordon testified that on numerous occasions he requested that Portfolio provide him with a letter or at least an address for him to write to request that the calls stop, and each time the Portfolio representative refused to provide him with an address. Gordon Dep. at 52:18-53:23, 93:8-15. Gordon's testimony in this respect is corroborated by the audio recording of the December 28, 2010 phone call, wherein Gordon can be heard asking for an address to write to Portfolio, and the Portfolio representative does not respond to the request. R. 46-4, Pl.'s Exh. C (audio file) at 1:05. Finally, Gordon testified that Portfolio used an "extremely loud buzzing sound" in some of the phone calls with him; the December 28 audio file corroborates

9

that the loud buzz is heard during that call. Gordon Dep. at 125:24-126:6; R. 46-4, Pl.'s Exh. C (audio file) at 2:25. Portfolio has not provided any reason for using a buzzing device in its calls *other than* to harass the recipient of the phone call (again, at the summary judgment stage, the evidence is viewed in Plaintiffs' favor, meaning that we assume that Portfolio indeed employs such a device during its calls).

To the extent the Swearingens state a claim separately under § 1692d alone, they are not required to prove intent—the only question is whether the "natural consequence" of Portfolio's conduct was to "harass, oppress, or abuse" the Swearingens. *See Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003) (noting that intent is irrelevant under the other provisions of § 1692d). In this regard, Gordon's testimony about the "extremely loud buzzing sound," confirmed by the recording produced by Portfolio, persuades the Court that a reasonable jury could find that the natural consequence of such a noise device is to harass the call recipient. The Swearingens' claim under § 1692d therefore provides a separate basis for denying Portfolio's motion with regard to the phone calls made to Gordon.

**B.**

Debt collectors are also prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, a debt collector may not: (1) "threat[en] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5); or (2) "use [ ] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). To

10

determine whether a debt collector's conduct is "false, deceptive, or misleading" within the meaning of the statute, the Court must view the evidence from the standpoint of the "unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). As the Seventh Circuit has explained:

> The 'unsophisticated consumer' isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences. If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense.

*Id.* at 645-46 (internal quotations and citations omitted).

As a preliminary matter, Portfolio argues both that it cannot be liable to *Majolis* under § 1692e because its representatives never actually spoke to the debtor, R. 33, Def.'s Br. at 10, and that threats made in phone calls answered by *Gordon* cannot be a basis for liability because Gordon is not the debtor and therefore does not have standing to sue under § 1692e. R. 48, Def.'s Reply Br. at 11. Portfolio cites to *Dewey v. Associated Collectors, Inc.*, 927 F.Supp. 1172 (W.D. Wis. 1996) in support of this argument. Because it is a district-court opinion, *Dewey* is not controlling authority, and also is distinguishable from the current case. *Dewey* considered allegations brought by a debtor's wife over a collection letter that was neither addressed to nor read by her. *Id.* at 1174. The district court granted the debt collector's motion to dismiss, but recognized that in some cases non-debtors have standing to sue under the FDCPA, since otherwise "collection agencies would [ ] escape[ ] liability because their illegal collection letters never reached the actual debtors." *Id.* at 1175. This case is exactly

what *Dewey* envisioned—Portfolio's phone calls were always and only answered by Gordon, and Portfolio was never able to speak Majolis herself. DSOF ¶¶ 26, 32.

As explained above, courts have held that non-debtors may recover under the FDCPA, where prohibited conduct was either experienced by or directed toward the non-debtor. *See also Garrett v. Empire Cooler Service, Inc.*, 2004 WL 838032, at *2 (N.D. Ill. Apr. 16, 2004) (non-debtor had standing to sue where debt collection practices were directed towards his property) ; *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 WL 136313, at *7-8 (N.D. Ill. Mar. 19, 1997) (debtor's wife had standing to sue where debt collection practices were "both experienced by and direct toward" her). Any other rule would not only violate the purposes of the FDCPA, but would allow debt collectors to escape liability, no matter how egregious their conduct, whenever they were unsuccessful in reaching the debtor himself. Portfolio may be held liable for threats made to Gordon.

The second issue is whether Gordon has created a genuine issue of fact regarding Portfolio's conduct that could lead a reasonable jury to find that Portfolio either "threaten[ed] to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5), or "use[d] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692(e)(10). Gordon testified at his deposition as follows:

A.      They threatened to sue me. They said we can have you sued over this. We can take everything you own over this. We can tie up your bank accounts over this . . . .

Q.      Okay. When did they tell you this?

> A. When she called in the investigator. And they were investigating to start a lawsuit and that could entail taking my check, my paychecks, my— they could take my—she said they could take my bank accounts, whatever I had. They could take property, if they got a judgment against me . . . .

Gordon Dep. at 88:3-15. Although Portfolio denies that its representatives ever threatened that they were investigating and/or filing a lawsuit, R. 49, Def.'s Resp. PSOF ¶¶ 5, 31, 39-41, the Swearingens have provided enough admissible evidence, through Gordon's deposition testimony and sworn declaration, and in sufficient detail, to create a genuine issue of fact as to whether Portfolio threatened Gordon and Majolis with a debt collection lawsuit. *Marr*, 662 F.3d at 968 ("[U]ncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts."). *See also* Gordon Dep. at 63:18-64:13, 91:21-92:7, 97:19-22, 106:20-107:6, 108:1-17; Gordon Decl. ¶¶ 4, 11, 15-17.

The final issue this Court must decide is whether threatening to file a lawsuit on the debt in this case would violate either § 1692e(5) or § 1692e(10) of the FDCPA. The Swearingens have argued, and Portfolio has not denied, that Portfolio could not legally take, and did not intend to take, legal action with regard to the debts in this case, given the age of the debts in this case. R. 45, Pl.'s Resp. Br. at 18; R. 48, Def.'s Reply Br. at 5. Courts appear to be in agreement that although mere efforts to collect on a time-barred debt may not be prohibited by the FDCPA, threats to file a lawsuit on a time-barred debt may constitute a violation of § 1692e(5) of the Act. *See Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (attempting

to collect on a time-barred debt does not violate the FDCPA "*in the absence* of an express threat of litigation") (emphasis added); *Murray v. CCB Credit Services, Inc.*, 04 C 7456, 2004 WL 2943656, at *2 (N.D. Ill. Dec. 15, 2004) ("[A] violation of the FDCPA occurs if the attempt to collect the time-barred debt is accompanied by a threat to sue, or if litigation has actually begun."); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001) ("[I]n order to survive a motion to dismiss, a defendant's attempt to collect on a time-barred debt must be accompanied by actual litigation or a threat, either explicit or implicit, of future litigation."); *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 393 (D. Del. 1991) ("[T]hreatening [ ] a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate."). Viewing the evidence in the light most favorable to the Swearingens, Portfolio knew it could not and did not intend to file a lawsuit to collect on Majolis's 20-year-old debts, and therefore the Swearingens have raised a genuine issue as to whether Portfolio violated § 1692e(5).

In addition, even if this Court were to find the Swearingens did not raise an issue of material fact as to whether Portfolio's threats constituted a violation of § 1692e(5), the Swearingens have also raised a genuine issue of material fact as to whether such threats by Portfolio constituted a "deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). The Seventh Circuit has noted with approval that "[c]ourts have found violations of § 1692e(10) where notices falsely represent 'that unpaid debts would be referred to an attorney for immediate legal

14

action.'" *Combs v. Direct Marketing Credit Services, Inc.,* 1998 WL 911691, at *2 (7th Cir. Dec. 29, 1998) (citing *United States v. National Financial Services, Inc.*, 98 F.3d 131, 138 (4th Cir. 1996)). A reasonable jury could find that the threats alleged by Gordon were an attempt by Portfolio to coerce Gordon and Majolis into paying their debts, by misleading them into believing that if they did not pay, Portfolio would sue them and/or have their wages garnished.

## C.

Portfolio also moved for attorneys' fees on the basis of 15 U.S.C. § 1692k(a)(3). That section of the FDCPA awards attorneys' fees to defendants only "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). Because this Court concludes that the Swearingens have successfully defeated Portfolio's motion for summary judgment, an award of attorneys' fees is not appropriate.

In its reply brief, Portfolio also moves for attorneys' fees under 28 U.S.C. § 1927.[9] R. 48, Def.'s Reply Br. at 12-14. Section 1927 gives a court discretion to impose costs, expenses and fees on any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Although discovery did not proceed smoothly,[10] the

---

[9] The Court notes that this argument was inappropriately raised for the first time in Portfolio's reply brief. *See Multi-Ad Services, Inc. v. N.L.R.B.*, 255 F.3d 363, 370 (7th Cir. 2001) ("It is well-settled that parties may not raise new arguments or present new facts for the first time in reply."). The Court nevertheless briefly addresses the argument, which does not prejudice the Swearingens, since the Court does not find in Portfolio's favor on the issue.

[10] It is worth noting that the Swearingens failed to produce any phone records in this case that would have corroborated Gordon's testimony regarding the calls placed to his cell. Although this Court does not decide issues of credibility on a motion for summary judgment,

conduct does not rise to the level required to impose penalties under 28 U.S.C. § 1927.

*See Burda v. M. Ecker Co.,* 2 F.3d 769, 777 (7th Cir. 1993).

## IV.

For the reasons stated above, Portfolio's motion for summary judgment [R. 31]

is denied. At the upcoming status hearing, the parties should be prepared to address

the case schedule moving forward.

ENTERED:


     s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge


DATE: September 24, 2012

---

the credibility of Gordon's testimony, which appears to be Plaintiffs' primary evidence, will be a crucial issue for Plaintiffs at trial.